**WO**                                                                                          JL

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aaron Dias, | No.   CV-23-00259-PHX-MTL (JFM) |
| Plaintiff, | |
| v. | **ORDER** |
| Ryan Thornell, et al., | |
| Defendants. | |

On February 9, 2023, Plaintiff Aaron Dias, who is confined in the Arizona State Prison Complex (ASPC)-Lewis and is represented by counsel, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983 and paid the filing and administrative fees.  In an April 5, 2023 Order, the Court dismissed the Complaint because Plaintiff had failed to state a claim. The Court gave Plaintiff 30 days to file an amended complaint that cured the deficiencies identified in the Order.

On May 4, 2023, Plaintiff filed a First Amended Complaint.  In a May 9, 2023 Order, the Court dismissed the First Amended Complaint because Plaintiff had failed to state a claim.  The Court gave Plaintiff another 30 days to file a second amended complaint that cured the deficiencies identified in the Order.

On June 7, 2023, Plaintiff filed a Second Amended Complaint (Doc. 8).  The Court will order Defendant Centurion to answer the Second Amended Complaint and will dismiss the remaining Defendants without prejudice.

. . . .

## I.      Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity, regardless of whether the prisoner is represented by counsel.  28 U.S.C. § 1915A(a); *In re Prison Litig. Reform Act*, 105 F.3d 1131, 1134 (6th Cir. 1997) ("District courts are required to screen all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel, as [§ 1915A] does not differentiate between civil actions brought by prisoners.").  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

## II.     Second Amended Complaint

In his Second Amended Complaint, Plaintiff sues former Arizona Department of

Corrections, Rehabilitation and Reentry ("ADC") Director David Shinn, Assistant Director of the Medical Service Contract Monitoring Bureau Larry Gann, Warden John Mattos, former Warden Gerald Thompson, and Centurion of Arizona ("Centurion"), the former contracted healthcare provider for ADC prisoners.[1]   Plaintiff asserts a § 1983 claim regarding his medical care against all Defendants and a state-law medical negligence claim against Defendant Centurion.  He seeks monetary relief, as well as his costs and attorney fees for this case.  Plaintiff alleges the following:

On February 24, 2021, while in ADC custody at ASPC-Florence, Plaintiff began to complain of severe neck pain.  (Doc. 8 ¶ 29.)  That day, Plaintiff saw Registered Nurse ("RN") Kidd-McDonald, who noted there were verbal orders from Nurse Practitioner ("NP") Fullmer for an EKG, x-ray, and Toradol.  (*Id.* ¶ 30.)  Kidd-McDonald also noted orders for prednisone, diazepam, capsaicin cream, and ibuprofen.  (*Id.*)  According to Plaintiff, prednisone, ibuprofen, and Toradol are contraindicated for use together because they could cause a gastric ulcer or rupture.  (*Id.*)

The same day, RN Kohlmeier saw Plaintiff and noted that Plaintiff reported that he was in tremendous pain and that, on a scale of 10, his pain was at a 20.  (*Id.* ¶ 31.)  RN Kohlmeier contacted a provider, who denied Plaintiff's request for a repeat dose of diazepam and Toradol and recommended an ice pack and ibuprofen, which were given to Plaintiff.  (*Id.*)  RN Kohlmeier wrote the following Plan Notes: "Continue plan of care as ordered by provider."  (*Id.*)

On February 25, 2021, in response to a health needs request, Plaintiff saw RN Andre, who assessed him with "[a]ltered comfort RT neck," determined that no referral to a provider was necessary, and wrote under the Plan Notes heading, "no follow up."  (*Id.* ¶ 32.)

On March 3, 2021, an Incident Command System ("ICS") was initiated for Plaintiff's pain, and he was scheduled to see a provider.  (*Id.* ¶ 33.)  The next day, Plaintiff

---

[1] Centurion was the healthcare provider for ADC prisoners from July 1, 2019, until October 1, 2022.

saw NP Fullmer.  (*Id.*)  NP Fullmer noted that the day before, she had informed Plaintiff that she would see him on March 4, 2021, "to discuss plan of care to manage his pain and eliminate the need to initiate an ICS inappropriately." (*Id.*)  NP Fullmer noted that Plaintiff "reports no change in his pain despite topical creams and NSAIDS" and that "he had very limited mobility" and "'twinges' of pain to the low back." (*Id.*)  NP Fullmer did not perform a neurological exam, test Plaintiff's reflexes, or conduct an assessment for clonus (a physical exam to detect an involuntary rhythmic contraction of muscles caused by damage to the central nervous system). (*Id.*)  NP Fullmer listed the following Plan Notes: "review XR, f/u as needed." (*Id.*)

A rheumatoid panel was ordered on March 4, 2021.  (*Id.* ¶ 34.)  Plaintiff's c-reactive protein result was 20.3, which is elevated and indicates acute inflammation, which in turn, is suggests infection.  (*Id.*)  NP Fullmer reviewed the results on March 13, 2021, and noted: "acute inflammation" and "f/u in 1-2 wks." (*Id.*)

On March 16, 2021, Plaintiff was transferred from ASPC-Florence to ASPC-Eyman.  (*Id.* ¶ 35.)  Plaintiff reported back pain upon arrival and was given ibuprofen.  (*Id.*)  Over the next two days, three ICSs were called because Plaintiff's severe pain impaired his mobility.  (*Id.*)  After the first two ICSs, Plaintiff was given Toradol shots.  (*Id.*)  Plaintiff had to be moved by wheelchair to be evaluated after the first ICS on March 17, 2021, and he had to be transported to the clinic on a gurney for two ICSs the following day.  (*Id.*)

On March 19, 2021, Plaintiff saw NP Brathwaite.  (*Id.* ¶ 36.)  NP Brathwaite's medical notes documented Plaintiff's deterioration and increasing neurological dysfunction: "Patient reports to clinic on stretcher complaining of severe back pain and complete loss of sensation on right side of body incontinence inability to ambulate," and "Patient reports bladder incontinence, inability to ambulate x 2 weeks."  NP Brathwaite sent Plaintiff to a community hospital emergency room via ambulance.  (*Id.*)

At the hospital, staff suspected Plaintiff had a spinal abscess and admitted him.  (*Id.* ¶ 37.)  On March 21, 2021, Plaintiff had surgery for an epidural abscess at C6-7.  (*Id.* ¶ 38.)  The epidural abscess had grown over time and Plaintiff's symptoms were caused by

the abscess compressing his spinal cord.  (*Id.*) Plaintiff was then transferred to a subacute hospital, where he stayed for two months.  (*Id.* ¶ 39.)  Plaintiff still suffers constant, chronic, severe neurological pain and is unlikely to regain normal functioning.  (*Id.* ¶ 40.)

Citing findings in *Jensen v. Shinn*, 609 F. Supp. 3d 789, 865 (D. Ariz. 2022), a prisoner class action lawsuit concerning medical care at ADC facilities, Plaintiff alleges the Defendants had policies and practices regarding medical services, and specifically, Plaintiff, that rose to a level of deliberate indifference and resulted in Plaintiff's injuries, including: (a) failure to test differential diagnoses that led to avoidable, permanent injuries; (b) systemic failures in hiring and retaining sufficient appropriate medical staff that was well below the constitutional minimum resulting in substantial risk of serious harm and rose to the level of deliberate indifference, (c) failure to use an appropriate electronic health record, employ sufficient appropriate staff, allocate sufficient time for the evaluation of symptoms, and failure to made differential diagnoses, (d) failure of nursing staff to refer prisoners to providers due to lack of staff, (e) failing to provide prisoners with timely access to medically necessary specialty and emergency care, and (f) failing to timely provide necessary medication.  (*Id.* ¶¶ 44-54.)

Plaintiff further asserts that Defendants have a policy and practice of failing to provide prisoners with adequate medical care and are deliberately indifferent to the fact that the systemic failure to do so results in significant injury and a substantial risk of serious harm.  (*Id.* ¶ 47.)  Plaintiff contends Defendants' failure to provide adequate medical care results in prisoners experiencing prolonged, unnecessary pain and suffering, preventable injury, amputation, disfigurement, and death.  (*Id.*)  Plaintiff alleges Defendants also have a policy and practice of relying on unqualified personnel to perform medical procedures for which they are inadequately trained and supervised.  (*Id.* ¶ 54.)

## III.   Discussion of Second Amended Complaint

### A.   Court's Findings in *Jensen*

The Court first address Plaintiff's insistence that the Court's findings in *Jensen* necessarily compel the Court to conclude that Plaintiff has stated a claim against *every*

*Defendant* in *this* case.  Plaintiff alleges the following with respect to *Jensen*:

> The constitutionally inadequate medical care Plaintiff received in this case arose prior to the trial in *Jensen v. Shinn* and prior to Judge Silver's ruling.  The specific injuries, conduct, and constitutional violations alleged by "A.D." (and found to be constitutionally inadequate by Judge Silver) in Jensen gave rise to this action, as Jensen's "A.D." is Plaintiff Aaron Dias.  Therefore, the findings and ruling in Jensen directly apply to Plaintiff Dias (aka "A.D.") and his claim in this action.  Plaintiff Dias met with experts and his medical records were reviewed by experts as part of the *Jensen* case.  Evidence of Plaintiff Dias' condition, medical care, and treatment he received from Defendants in this case, was presented to the Court in the *Jensen* trial[.]  Plaintiff Dias' medical history, treatment, and current condition were discussed by the Honorable Roslyn O. Silver in her *Jensen* ruling.

> The Factual Allegations below describe the sequence of events that are the heart of Plaintiff Dias' claims in this matter.  The events detailed below are the same events detailed for the Court in *Jensen* and subsequently found to be "well below the constitutional minimum."  The constitutionally deficient care that led to Plaintiff Dias' current condition and, ultimately, the filing of this Complaint has already been litigated (in *Jensen*), analyzed, and determined to be unconstitutional by United States District Court Judge Roslyn O. Silver in *Jensen*.  Defendant Shinn and Defendant Gann are the same Defendants in *Jensen* found to be "acting with deliberate indifference to Plaintiff's serious medical and mental health care needs."  The Plaintiffs in *Jensen* included Plaintiff Dias (aka "A.D.").  Defendant Shinn is same Defendant found by Judge Silver to have acted "with deliberate indifference to the substantial risk of serious harm" the Plaintiffs, including Plaintiff Dias (aka "A.D.") were subjected to in *Jensen*.  This finding was made after considering evidence in the *Jensen* trial.  The evidence considered included the sequence of events relating to Plaintiff Dias' medical care, which is also detailed below.  The Court in *Jensen* further found that Defendant Shinn knew of the "ongoing systemic failures" regarding ADC healthcare and that he "adopted a strategy of pretending the problems he knows about do not exist."  In *Jensen*, the Court found that Defendant Gann's testimony contained "overwhelming

evidence he knows of ongoing systemic failures but refuses to take adequate remedial action."

Correctional health care in the ADC system at the times material to the allegations in this Complaint was managed and administered by Defendant Centurion of Arizona, LLC. Evidence presented in *Jensen* showed that Defendant Centurion "had significant concerns regarding its performance." Correspondence regarding the constitutionally deficient medical care being provided by Centurion was sent by Defendant Shinn to Defendant Centurion's CEO. Thus, Defendant Centurion had knowledge of the constitutionally inadequate medical and mental health care it was providing in Arizona prisons, including facilities where Plaintiff was housed, but did nothing to bring its medical care provided in Arizona prisons up to the minimum constitutional standard. Plaintiff was at the times material to the allegations in this Complaint and is today entirely dependent on Defendants for his health care. The lack of constitutionally adequate health care for inmates in the ADC system manifested in permanent and catastrophic injuries to Plaintiff as described herein. These injuries were preventable and would not have occurred but for Defendants' negligence and deliberate indifference to his health care needs. The United States District Court for the District of Arizona has found that the medical care provided to Plaintiffs in *Jensen*, which included Plaintiff Dias (aka "A.D."), was "grossly inadequate." The evidence presented in *Jensen*, and therefore directly applicable to the allegations contained in this Complaint, "demonstrated that the individual cases before the Court were the product of deliberate indifference to serious medical needs and the root cause of the deliberate indifference were the policies that prevented any substantive treatment of the serious medical needs of the individuals." Plaintiff Dias' (aka "A.D.") case was one of the "individual cases before the Court."

(*Id.* ¶¶ 3-19.)

Plaintiff is a member of the *Jensen* class, but that is irrelevant to whether his allegations *in this case* state a claim. The complaint in *Jensen* presented five claims for relief on behalf of what would subsequently be identified as a main class and one subclass. The class consisted of all prisoners at ADC's ten complexes. According to the complaint,

Defendants[2] subjected class members to a substantial risk of serious harm and injury from constitutionally deficient health care, dental care, and mental health care.

Following a bench trial, on June 30, 2022, the Court in *Jensen* made Findings of Fact and Conclusions of Law with respect to whether Defendants violated the constitutional rights of Arizona's prisoners through the existing medical and mental health care system.  Importantly, the Court did not conclude that any class member—including Plaintiff—had stated an *individual* claim regarding his *own* medical care.  Rather, the Court cited evidence regarding Plaintiff's medical care—among dozens of other class members—to support its conclusion that Defendants in *Jensen* had violated the rights *of the class*.[3]  Needless to say, the personal liability of the Defendants in *Jensen* with respect to the medical care of any particular class member was not at issue; rather, the question was whether the *Jensen* Defendants' policies and practices created a substantial risk of serious harm to *all prisoners*.  609 F. Supp. 3d at 871.  In short, the Court's findings in *Jensen* alone are insufficient to state a claim against Defendants in this case.

### B.   Defendant Centurion

Plaintiff's allegations in the Second Amended Complaint are essentially unchanged from the allegations in the First Amended Complaint.  Plaintiff again lumps all Defendants together and alleges that "Defendants" have various policies, without specifically identifying a policy that any named Defendant created or implemented that Plaintiff alleges caused him injury.  Despite these deficiencies, the Court concludes the allegations are at least sufficient to warrant a response from Defendant Centurion.  *See Wilmer v. Rotman*,

---

[2] The class action was originally filed as *Parsons v. Ryan* and named former ADC Director Charles L. Ryan and Interim Division Director Richard Pratt, in their official capacities, as the sole Defendants, and sought only injunctive relief. (Doc. 1 in 12-00601.) After Director Ryan's retirement, the Court substituted former Director David Shinn; following Shinn's retirement, the Court substituted Director Ryan Thornell. (Docs. 3412, 4393 in 12-00601.)  Contrary to Plaintiff's suggestion that Defendants in this case "are the same Defendants in *Jensen* found to be 'acting with deliberate indifference to Plaintiff's serious medical and mental health care needs,'" Defendants Gann, Mattos, and Thompson were never named as Defendants in *Jensen*.

[3] The Court in *Jensen* described Plaintiff's medical care as an example of mismanagement of complex cases.  The Court did not make any findings with respect to any individual Defendant's involvement in or knowledge of *Plaintiff's* medical care.

680 F.3d 1113 (9th Cir. 2012).  The Court will therefore require Defendant Centurion to answer the Second Amended Complaint.

### C.    Individual Defendants

Plaintiff names Shinn, Gann, Mattos, and Thompson in their individual capacities. A suit against a defendant in his or her individual capacity seeks to impose personal liability upon the official.  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  For a person to be liable in an individual capacity, "[a] plaintiff must allege facts, not simply conclusions, that show that the individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

There is no respondeat superior liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

Plaintiff has alleged no facts to support that the named individual Defendants personally participated in a deprivation of Plaintiff's constitutional rights or was aware of a deprivation and failed to act.  Indeed, Plaintiff makes no specific allegations against any of the individual Defendants.  And it is simply false that the individual Defendants in *Jensen* were "found to have acted with deliberate indifference" to Plaintiff's serious medical needs.  As noted above, evidence of Plaintiff's serious medical needs supported the Court's conclusions that the *policies* of the Defendants in *Jensen* were deliberately indifferent as to all prisoners, but the Court did not make any determination whether the evidence regarding Plaintiff's medical care was sufficient to state standalone individual liability claims against *any* Defendant.

Rather, Plaintiff claims that "Defendants" have various policies, without specifically identifying a policy that any specific Defendant created or implemented that

Plaintiff alleges caused him injury.  A supervisor only may be held liable in his or her individual capacity "if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Lemire v. Cal. Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1074– 75 (9th Cir. 2013) (quoting *Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003)).

Moreover, a plaintiff must "allege overt acts with some degree of particularity such that his claim is set forth clearly enough to give defendants fair notice" of the allegations against them.  *Ortez v. Washington County*, 88 F.3d 804, 810 (9th Cir. 1996). "When all defendants are lumped together in factual allegations, such pleading does not provide the defendants with notice of the basis for allegations." *Sekerke v. City of National City*, No. 19cv1360-LAB (MSB), 2020 WL 4435416, at *5 (S.D. Cal. Aug. 3, 2020); *see also Gauvin v. Trombatore*, 682 F. Supp. 1067, 1070-71 (N.D. Cal. 1988) (plaintiff's complaint "lumped" all defendants "together in a single, broad allegation" without "stating with any specificity how each private defendant allegedly deprived [plaintiff] of a right secured by the Constitution").

Although Plaintiff alleges that he was injured because of the same deficiencies found in *Jensen*, he has not alleged facts to support those allegations or to support that the individual Defendants in *this* case acted with deliberate indifference to his serious medical needs.  Plaintiff has not alleged that any specific treatment decision was made pursuant to any policy created or enforced by any of the individual Defendants.  In short, Plaintiff has not alleged facts to support that any of the individual Defendants were sufficiently personally involved in any of the events described in the Second Amended Complaint to hold them liable in their individual capacities for any injury Plaintiff suffered.  Thus, the Court will dismiss Defendants Shinn, Gann, Mattos, and Thompson.

…

…

…

…

**IT IS ORDERED:**

(1)     Defendants Shinn, Thompson, Mattos, and Gann are **dismissed** without prejudice.

(2)     Defendant Centurion must answer the Second Amended Complaint.

(3)     If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Second Amended Complaint on Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed.   Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(4)     This matter is referred to Magistrate Judge James F. Metcalf pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 4th day of July, 2023.

Michael T. Liburdi
United States District Judge